Parsons v. Lent.

ELWOOD PARSONS

v.

BENONI S. LENT et al.

1. Recording a mortgage in the records of assignments of mortgages, is not constructive notice.

2. That a board of directors of a company incorporated in this state, held its meetings out of the state, does not affect its title to lands acquired here.

3. Where a mortgagor gave a mortgage covering all of his interest in a corporation and in its lands—*Held*, that it was not a lien on lands then owned by him, and which he was under contract to convey, and afterwards conveyed accordingly to the corporation, superior to the title of the corporation, but only a lien on his interest in the company.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. S. Aitkin*, for complainant.

*Mr. G. S. Cannon*, for the defendants, the Crystal Lake Ice Company, Harriet W. Dodge and Benoni S. Lent.

THE CHANCELLOR.

The bill is filed for the foreclosure of a mortgage given December 16th, 1872, by Benoni S. Lent to the complainant, as collateral security for the payment of a bond and mortgage for $2,500 and interest, given the same day by Lent and his wife to the complainant on land (a farm) in Mansfield township, Burlington county. The mortgage in suit recites the giving of the principal mortgage, and states that under an agreement dated June 28th, 1872, and another supplemental to it, dated December 5th, 1872, both made by and between William H. Gatzmer, Robert S. Van Rensselaer, Algernon S. Dodge and Lent, an ice company known and designated as "The Crystal Lake Ice Com-

pany," had been created and organized by those parties on lands of Lent, in the above-mentioned township, which he, by the agreement of June, 1872, agreed to convey to that company at a time fixed in that agreement, and that on that property a large ice-house was then in the course of erection and construction, besides other improvements, and that in and by that agreement and the supplemental one, it was expressed and stipulated that Lent was to have a two-fifths interest and ownership in the company,. and in its lands and rights and appurtenances of every kind and description. It then assigns to the complainant all Lent's. " right, title, interest, claim and estate of every kind and description whatsoever in said Crystal Lake Ice Company, and in all the lands, hereditaments, buildings, machinery, apparatus and appurtenances thereunto belonging; the same being his two-fifths interest therein;" and Lent thereby constitutes the complainant his attorney irrevocable in the premises, to take possession of and to dispose of his interest in the company in the event of non-payment of the principal bond and mortgage at maturity, and to pay himself in full out of it, returning to Lent the surplus; and to do all other necessary acts and things to assure and perfect his title thereto. The land in question which Lent agreed to convey to the company was part of his farm. There was a mortgage on the whole farm held by the complainant and others, executors of William Taylor, deceased. The complainant's principal mortgage expressly excepted from its operation the land to be conveyed to the company as land which Lent had agreed to convey to it. In July, 1873, the executors of Taylor released from their mortgage the excepted land which Lent was then about to. convey to the company. In or about 1876, the property was. sold under foreclosure of the first mortgage, and nothing was realized thereon above the amount due on that encumbrance. The mortgage in suit was not recorded in the records of mortgages, but in the records of assignments of mortgages. Van Rensselaer, Gatzmer, Lent and Dodge, and their associates were incorporated as "The Crystal Lake Ice Company," April 3d, 1873 (P. L. of 1873 p. 1397), and the company was organized on the 28th of June, 1873, with a capital of $50,000, in shares.

Parsons *v.* Lent.

of $100 each, of which Lent subscribed $200 and each of the other corporators $100. Lent and his wife conveyed the land to the company by deed dated July 1st, 1873. On April 23d, 1878, the company gave a mortgage on it to Harriet W. Dodge to secure a loan of $5,000 made to it by her. The complainant insists that the mortgage in suit is a mortgage of the undivided two-fifths of the land which Lent had agreed to convey to the company, and that as to that interest he is entitled to priority over the company's title and Mrs. Dodge's mortgage. He insists that the company, if it had not constructive notice, had actual notice of his mortgage when it took its deed; that it appears that the company held all its meetings out of this state, and therefore, he contends, never had any legal existence; that it never paid anything for the land, and that there is indeed no legal evidence that it ever bought it.

The land in question is a tract of about sixty acres, and, as before stated, it constituted part of Lent's farm. He sold it in March, 1872, to Dodge, Van Rensselaer, Cooper and Gatzmer for $100 an acre, for the purpose of establishing an ice business there, or for other purposes. A written agreement to that effect was drawn, and though it was not signed by the purchasers, Lent signed a receipt written under it, acknowledging the payment to him by them of $100 on account of the agreement. It appears to have been agreed between the parties that Lent was to join the purchasers in the contemplated enterprise of making and dealing in ice. He was to give the company a clear title to the property, and inasmuch as it would be necessary for him to have the sum of $3,000 in cash, to enable him to obtain a release from the Taylor mortgage, the company was to pay him the $3,000, but he was to take stock for the rest of the purchase-money. It seems that in June, 1872, an agreement was drawn, to be executed by Gatzmer, Cooper, Van Rensselaer, Dodge and Lent, by which, among other things, it was provided that they would associate themselves together under the name, style and title of " The Crystal Lake Ice Company;" that the business should be carried on on the property, which, according to the instrument, Lent was to furnish at the price of $100 an acre; that the im-

provements (buildings &c.) were to be put on the land, and the interest of the purchase-money to be paid by the other persons, Lent to pay no part of either; and that on the 1st of November, 1875, he was to convey to each of the others, Dodge, Van Rensselaer, Gatzmer and Cooper, an equal one-fifth of the property, retaining a fifth for himself. That instrument appears to have been unsatisfactory to Cooper, who withdrew from the enterprise, and the paper was never signed. Subsequently, and perhaps in December, 1872, there may have been another agreement drawn, by which Lent himself took Cooper's share. It does not appear that if such agreement was drawn it was ever signed. The probability is that the associates (who contemplated becoming incorporated) considered it unnecessary to sign any agreement on the subject, inasmuch as their interests could be properly and easily adjusted under the incorporation. As before stated, they were incorporated April 3d, 1873, and they subsequently took a deed for the property to the company from Lent and his wife, the consideration of which was $6,000. In the meantime, between the time of the agreement to buy, March, 1872, and the date of the deed, July, 1873, the buildings and other improvements requisite for the business had been put on the property, Dodge, Van Rensselaer, Gatzmer and Lent advancing the money. Under a resolution of April, 1875, seventy per cent. of the capital stock subscribed was issued to the subscribers in proportion to their advances. In issuing the stock, Lent, in addition to his other advances, was credited with $6,000 for the price of the land. He received eighty-five shares, all of which, except three which he still owns, he appears to have sold in 1875 to one Jacob Engle.

That the record of the mortgage in suit was not constructive notice to the company, there can be no doubt. The mortgage was, as before stated, recorded in the records of assignments of mortgages, and nowhere else. It was the complainant's business to see to it that it was properly recorded. Recording it in the records of assignments of mortgages was a nullity so far as notice was concerned. Nor is the complainant's position that the company was not a *bona fide* purchaser for valuable consid-

eration, tenable. The deed to it is evidence of its purchase of the property. Of its *bona fides*, there is no room for question, and it is proved that it paid a valuable consideration.

The fact that the board held its meetings in Philadelphia will not affect the company's claim to protection in this suit. *Coe* v. *N. J. Midland R. R. Co.*, *4 Stew. Eq. 105, 117.* Moreover, no act of its board of directors is brought in question here. The complainant seeks to enforce his mortgage against property, the legal title to which is in the company. The company had the power to acquire the property, and it appears to have done so. There is no evidence of any illegal or questionable action on its part in that matter. It does not even appear that the resolution of the board to buy the property was not passed in this state. No proof of any such resolution is in any way necessary to the validity of its title. *Ang. & Am. on Corp.* § *173.*

The complainant fails, too, on the point of actual notice. He testified that he gave notice to both Van Rensselaer and Dodge of the existence of his claim under the agreement. They are both dead. There is no corroboration whatever of his testimony on the subject, and, according to his statement, nobody besides himself and them was present when he gave the notice, and he gave the notice to each of them when the other was not present. His testimony on the subject of notice to Van Rensselaer utterly fails to establish it, and as to notice to Dodge, he says that he told him that " Lent had given him a claim against his two-fifths interest," and he says he told him this on the occasion when Dodge called on him to see about obtaining the release for the property from the Taylor mortgage. In view of the fact that Dodge's errand was to obtain a release so as to give the company a clear title to its property, it seems quite improbable that he could have understood from the complainant that the latter would, when the property should have been conveyed to the company, have a claim superior to the company's title against two-fifths of it. But the mortgage in suit is itself conclusive against the complainant on this subject of notice. He never had a claim against two-fifths of the property. His mortgage transfers to him as collateral security not two-fifths of the land, but

all Lent's right, title, interest, claim and estate in the company, and its lands &c., and the recital in the mortgage is not that Lent was to retain or have two-fifths of the land, but that he was to have a "two-fifths interest and ownership in the company, in its lands, and in its rights and appurtenances, of every kind and description." The complainant had notice, by the recital of his mortgage, that Lent had agreed to convey the land to the company, and that expensive improvements thereon were in progress, and he therefore had notice of its right. What the unexecuted instrument of June, 1872, contained, we know, but we do not know what the instrument of December following contained. Lent testifies, however, that it was no part of the arrangement between him and his associates that he was to convey a fifth to each of them, but that the agreement was that he was to convey the property to the company. Both Gatzmer and Lent deny all knowledge of the existence of the alleged agreements of June and December, 1872, and there is, in fact, no evidence that such agreements ever existed. Conceding all that the complainant swears to on the subject of notice to Van Rensselaer and Dodge, and conceding that, as he insists, notice to the attorney who drew the complainant's mortgage in suit, and who, in fact, did probably all the company's legal business, and drew the deed from Lent to it, was notice to the company, the notice was only to the effect that Lent had mortgaged his interest in the company and its property. That was not notice that the complainant claimed that his mortgage title to the land was paramount to the title of the company. On the contrary, it was notice of a fact not only not adverse to, but entirely consistent with, the absolute paramount title of the company. Indeed, the mortgage in suit and his principal mortgage not only recognize the title of the company, but the former is based upon it, conveying an interest not in Lent's land, but in the company's property. This view applies, of course, to the claim that notice to Lent was notice to the company, because, as is alleged, he was its superintendent. He, however, it may be remarked, was not superintendent at or previous to the time when the deed to the company was delivered, and if he had been, on the principle of

the case of *Barnes* v. *Trenton Gas Light Co.*, *12 C. E. Gr. 33,* his knowledge would not have constituted notice to the company. But, in fact, notice of the mortgage, even if it had been given to the company itself, as before shown, was not notice of any claim adverse to that of the company upon the land in question, and the claim on the land is all that is to be dealt with in this suit. The bill will be dismissed, with costs.